IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RANDY H. PARRISH,                )
                                 )
       Plaintiff,                )
                                 )
    v.                           )      1:09CV845
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,[1]                     )
                                 )
       Defendant.                )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Randy H. Parrish, brought this action to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying an award of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __") and the parties have filed cross-motions for judgment (Docket Entries 10, 14). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

**PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging a disability onset date of October 1, 2006. (Tr. 122-29.) Upon denial of the applications initially (Tr. 63-75) and on reconsideration (Tr. 79-88), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 90). Plaintiff, his attorney, and a vocational expert ("VE") appeared at the hearing. (Tr. 23-54.) The ALJ ruled Plaintiff not disabled under the Act. (Tr. 7-22.) The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-3.)

In rendering that disability ruling, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2011.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: hypertension, diabetes mellitus, history of a liver transplant, hepatitis C, carpal tunnel syndrome and blindness in the right eye (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> . . .

2

> 5. . . . [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations . . . [of] no balancing or climbing, . . . [no] work around heights or around dangerous machinery, due to vision restrictions . . . [and only] frequent use of his hands for fingering and handling due to carpal tunnel syndrome.

(Tr. 12-13.)

Given that residual functional capacity ("RFC") and the VE's testimony, the ALJ concluded Plaintiff could not return to his past relevant work, but that a significant number of jobs existed in the national economy that Plaintiff could perform. (Tr. 16-18.) Accordingly, the ALJ decided that Plaintiff had not suffered a "disability," under the Act, at any time from the alleged onset date through the date of decision. (Tr. 18.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached

3

through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an
(continued...)

6

then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant receives benefits. Hines, 453 F.3d at 567.[5]

---

⁴(...continued)
equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

⁵ A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

**Assignments of Error**

Plaintiff first argues that the ALJ erred (in the formulation of the RFC and thus the resolution of step five) by "failing to consider the various factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinion of the treating physicians . . . ." (Docket Entry 11 at 7; see also id. at 8-12.) Further, Plaintiff asserts (again, in connection with the RFC and step five ruling) that the ALJ did not properly explain his rationale for the determination of Plaintiff's RFC. (Id. at 12-13.) Defendant contends otherwise and urges that substantial evidence supports the ALJ's decision. (Docket Entry 15 at 3-16.)

**1. Treating Physicians' Opinions**

Plaintiff contends the ALJ improperly evaluated the opinions of Drs. Braithwaite, Kirk, and McCracken and Nurse Practitioner Lindgren. (Docket Entry 11 at 7-12.) In particular, Plaintiff maintains the ALJ "fail[ed] to consider the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d) in evaluating the medical opinion of [Plaintiff's] treating physicians." (Id. at 8.)[6] Those contentions fail.

---

[6] Effective March 26, 2012, a re-codification moved the treating physician rule to 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2), but without substantive change. See 77 Fed. Reg. 10651–10657 (Feb. 23, 2012). The re-codification similarly moved the rule concerning physician opinions on issues reserved to the Commissioner (discussed below) from 20 C.F.R. §§ 404.1527(e) & 416.927(e) to 20 C.F.R. §§ 404.1527(d) & 416.927(d). See 77 Fed. Reg. 10651–10657 (Feb. 23, 2012). Given that all material events in this action preceded this non-substantive amendment, the undersigned will use the pre-March 26, 2012 citations.

8

The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, on the ground that treating sources "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). The rule also recognizes, however, that not all treating sources or treating source opinions deserve such deference.

First, the nature and extent of each treatment relationship may temper the weight afforded.  20 C.F.R. §§ 404.1527(d)(2)(ii) & 416.927(d)(2)(ii).  Further, a treating source's opinion controls only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2)-(4) & 416.927(d)(2)-(4).  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178.  Finally, opinions regarding issues reserved to the Commissioner, regardless of source, do not receive controlling weight.  See 20 C.F.R. §§ 404.1527(e) & 416.927(e).

As an initial matter, and as the Commissioner points out, "the record contains no indication that [Dr. Kirk's] opinion was entered into Plaintiff's claim file until September 14, 2009, when it was submitted as an attachment to Plaintiff's letter-brief to the Appeals Council seeking review of the ALJ's unfavorable decision." (Docket Entry 15 at 12 (citing Tr. 233-36).) Thus, because the ALJ did not have an opportunity to review Dr. Kirk's opinion prior to issuing his decision, he did not err in failing to discuss that opinion in his decision.[7]

Further, the record does not indicate that the ALJ improperly addressed Dr. Braithwaite's "Questionnaire To Physician Regarding Disability." (Tr. 599.) In that assessment, Dr. Braithwaite opined that Plaintiff could not sit or stand for more than 15 minutes at one time or more than one hour total in a workday, could not lift more than 5 pounds even occasionally, could only occasionally bend, stoop, or manipulate his hands, and needed to elevate his legs

---

[7] Plaintiff does not argue that new evidence from Dr. Kirk rendered the ALJ's finding unsupported by substantial evidence; rather, he contends that the ALJ had Dr. Kirk's opinion but gave it no consideration in his assessment. (Docket Entry 11 at 9.) However, even "review[ing] the record as a whole, including the new evidence [incorporated by the Appeals Council]," Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991), Plaintiff's argument lacks merit because Dr. Kirk's opinion would not have warranted weight and therefore does not render the ALJ's finding unsupported by substantial evidence. Dr. Kirk's opinion that Plaintiff could not work addresses a matter reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) & 416.927(e). Moreover, the record suggests that Dr. Kirk based his opinions on a single visit from Plaintiff (Tr. 612-15). See 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). Finally, although Dr. Kirk indicates that Plaintiff can lift only five pounds on an occasional basis and no weight on a frequent basis (Tr. 236), neither his comments (id.) nor his objective clinical observations from the single visit (Tr. 612-15) support those limitations in any way.

10

occasionally during a workday.  (Id.)  The ALJ evaluated Dr. Braithwaite's opinion as follows:

> Dr. Braithwaite's completed medical source statement as to her opinion of [Plaintiff's] ability to perform work activities are opinions expressed without providing any real explanation of the evidence relied on in forming that opinion.  Her conclusions are largely unsupported by her objective clinical findings and therefore, the undersigned does not give credence or substantial weight to Dr. Braithwaite's opinion.  However, § 20 CFR 404.1527(e) provides that an opinion on the issue of whether a claimant meets the statutory definition of disability is not a medical opinion but is, instead, an opinion on an issue reserved to the Commissioner.  Also, although a medical source, including a treatment source, can provide opinions on a claimant's [RFC], the final responsibility for deciding such an issue is reserved to the Commissioner.

(Tr. 16 (internal citation omitted).)

The ALJ did not err by noting that Dr. Braithwaite's objective clinical findings failed to support her proposed limitations and that they conflicted with other medical evidence and the record as a whole.  Dr. Braithwaite noted that Plaintiff exhibited leg edema (Tr. 211, 419, 485, 500) but, as the Commissioner points out, "this appeared to be of only mild degree, . . . [and] Plaintiff reported to another treating physician, Dr. Christopher Klipstein, on September 28, 2007 that lower extremity edema had been present since his 1995 liver transplant (Tr. 494), over ten years previous to his claimed October, 2006 disability onset date." (Docket Entry 15 at 7 (citing Goodermote v. Sec'y of Health and Human Servs., 690 F.2d 5, 7 (1st Cir. 1982), for the proposition that an impairment

11

is not disabling where plaintiff worked despite it for many years).) At only one appointment, approximately one year before Dr. Braithwaite filled out the Questionnaire, did Plaintiff complain of increased leg edema, for which Dr. Braithwaite prescribed Lasix. (Tr. 419.)

Furthermore, Dr. Braithwaite observed "[p]ossible adhesive capsulitis of the right shoulder" in November of 2006 and noted an intention to "[r]easses in the future" (Tr. 211), but made no further note of any follow-up during subsequent visits (Tr. 185-86, 206-08, 418-20, 484-85, 498-500, 567-68) until noting the same possibility on March 21, 2008 (Tr. 578), the date she filled out the Questionnaire stating Plaintiff could lift no more than five pounds (Tr. 599) and declared him disabled (Tr. 578). That same date, Dr. Braithwaite made her first and only reference to "complain[t]s of burning of the feet." (Tr. 578.) In sum, the record adequately supports the ALJ's decision not to give substantial weight to Dr. Braithwaite's opinions concerning Plaintiff's limitations.

Plaintiff next asserts that "Dr. McCracken's opinion was not discussed by the ALJ in his opinion, so [] it appears that no consideration was given to this opinion . . . ." (Docket Entry 11 at 10.) However, the record does not reflect any medical opinion by Dr. McCracken for which the ALJ needed to account. Instead, the

record contains only a letter from Dr. McCracken to the Social Security Administration dated February 16, 2007 (Tr. 372) and a fax referring Plaintiff to another physician (Tr. 374). The letter indicates that Dr. McCracken saw Plaintiff in May 2006 for vision impairment, but indicates that Dr. McCracken had "not seen [Plaintiff] since that time" (Tr. 372), thus confirming that his treatment occurred prior to Plaintiff's claimed onset of disability. Moreover, the letter merely states that Dr. McCracken "would support [Plaintiff's] application for disability based on his right eye difficulties." (Tr. 372.) To the extent this statement even constitutes a medical "opinion," it addresses the ultimate question of disability, an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e) & 416.927(e). The fax referral again references clinical and laboratory findings that predate the disability onset and states no medical opinions. (Tr. 374.) Therefore, the ALJ did not err in failing to address "opinions" from Dr. McCracken. See Throckmorton v. United States Dep't of Heath & Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990) ("Dr. Baraf did not document his conclusions with attached clinical findings, but rather summarily stated his conclusions in two one-page letters. Section 404.1526(b), 20 C.F.R., provides in pertinent part: 'Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory

13

diagnostic techniques.' Thus, under the regulations, the Secretary could have properly disregarded Dr. Baraf's diagnosis." (internal citations omitted)).

Finally, Plaintiff contends that the ALJ "discounted [Nurse Practitioner Lindgren's] opinion [that Plaintiff could not work] as conclusory, but fail[ed] to acknowledge that it [was] based on the EMG results that accompany it." (Docket Entry 11 at 10.) The ALJ addressed Nurse Practitioner Lindgren's opinion as follows:

> As for other opinion evidence, the noted [sic] dated June 9, 2009, from Cheyney Lindgren, Family Nurse Practitioner, of the orthopedics clinic, stating [Plaintiff] was not able to work, gives no basis for that finding other than [Plaintiff] was referred to a hand surgeon to discuss his carpal tunnel syndrome. The opinion expressed is conclusory, providing very little explanation of the evidence relied on in forming that opinion and is afforded little weight and consideration.

(Tr. 16.) Although Nurse Practitioner Lindgren's opinions do reference the results of an EMG, they neither translate any objective results into any functional limitations, nor explain how the results support the extreme determination that Plaintiff cannot work. (See Tr. 691, 695-98.) Moreover, the ALJ did acknowledge the results of the EMG (Tr. 15), identified Plaintiff's carpal tunnel syndrome as a severe impairment (Tr. 12), and accounted for it in the RFC (Tr. 13). Finally, as previously stated, Nurse Practitioner Lindgren's opinion that Plaintiff was "not able to

work" is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e) & 416.927(e).

Simply put, Plaintiff's challenge to the ALJ's discussion of the opinions of Plaintiff's treating physicians falls short as a matter of law.

**2. RFC Formulation**

Plaintiff also argues that the ALJ's "RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p, nor does it include the required 'function-by-function' assessment." (Docket Entry 11 at 12.) He contends "the ALJ merely summarized some of the medical evidence and did not provide the required analysis and rationale for the conclusion that [Plaintiff] retained an RFC for light work," and in particular that the ALJ failed to discuss Plaintiff's testimony that he suffers from joint pain, fatigue, numbness, tingling, and swelling of the hands and feet, which necessitates that he elevate his legs during the day. (Id. at 13.)

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R.

15

§§ 404.1545(b), 416945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ determined that Plaintiff could do "light work" in that he "is able to perform walking or standing 6 hours and sitting 6 hours in an 8 hour work day, and pushing and pulling of arm or leg controls at the light lifting and carrying exertional limitations," that he "can perform stooping, kneeling, crouching or crawling but no balancing or climbing and can not work around heights or around dangerous machinery, due to vision restrictions," and that he "is limited to frequent use of his hands for fingering and handling due to carpal tunnel syndrome." (Tr. 13.) A review of both the decision and the record clearly demonstrates that the ALJ not only supported these RFC

16

findings with substantial evidence but also built "an accurate and logical bridge" connecting the two.

> First, the ALJ's decision addresses Plaintiff's testimony:
>
> [Plaintiff's] testimony at the hearing was that due to vision loss he was unable to perform his past work that involved working on circuit boards or refurbishing cell telephones. Additionally, he was not able to use his hands and tape boxes as he was required to do before being laid off. His vision since his November 2008 cataract removal was okay but he did not feel he could see well enough to drive. He was able to watch television and read the newspaper.
>
> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determined impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 15.) Moreover, the ALJ did in fact address Plaintiff's asserted inability to stand for long periods of time, noting that, despite Plaintiff's testimony, "his treating physicians other than Dr. Braithwaite in March 2008 have not put any restrictions on him." (Tr. 16.) As discussed above, the ALJ then properly determined that Dr. Braithwaite failed to support her opinions with objective clinical evidence and they therefore did not deserve substantial weight, thus rendering Plaintiff's testimony contrary to the medical evidence. (Id.) Furthermore, although Dr. Braithwaite noted lower extremity edema on several visits (Tr. 211, 419, 485, 500, 568), the record reflects no instance in which

17

either she or any other treating physician recommended that Plaintiff elevate his legs during the day.

Additionally, despite his determination concerning Plaintiff's credibility, the ALJ explicitly resolved ambiguities regarding Plaintiff's capabilities in Plaintiff's favor. After finding the state agency physicians' RFC determinations (both for medium work) "well supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence," the ALJ nevertheless gave Plaintiff "the maximum benefit of the doubt," determined "he has greater physical limitations" than the state agencies recognized, and found him capable of light rather than medium work. (Tr. 16; see also Tr. 393-408.)

Finally, the ALJ specifically addressed both Plaintiff's vision impairments and his carpal tunnel syndrome in the RFC, noting that the first limited Plaintiff's ability to balance, climb, or work around heights or heavy machinery, and the second limited him to frequent use of his hands for fingering and handling. (Tr. 13.) In short, the ALJ rendered a decision that permits meaningful judicial review and accurately documents substantial evidence supporting the RFC determination.[8]

---

[8] Even assuming the ALJ violated SSR 96-8p's requirement of a function-by-function analysis of all work-related abilities, any such error qualifies as harmless given that substantial evidence supports the ALJ's RFC determination
(continued...)

**CONCLUSION**

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 7, 2014

---

[8](...continued)
and, in turn, the VE's conclusion that a significant number of jobs exists that Plaintiff could perform. See Robinson v. Astrue, No. 8:11-cv-03375-RMG-JDA, 2013 WL 625583, at *12 (D.S.C. Jan. 23, 2013) (unpublished) (concluding that ALJ's failure to make function-by-function assessment under SSR 96-8p represented harmless error where substantial evidence supported RFC determination); Crawley v. Commissioner, Soc. Sec. Admin., NO. SAG-11-2427, 2013 WL 93202, at *2 (D. Md. Jan. 7, 2013) (unpublished) (holding that the ALJ's failure to expressly discuss environmental limitations was harmless error under SSR 96-8p where substantial evidence supported the VE's recitation of suitable jobs).